## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HILLARY A. KACIAN,           )
           )
Plaintiff,           )
           )
       v.      )      CIVIL ACTION NO. 3:12-cv-102
           )
PATRICK R. DONAHOE,          )      JUDGE KIM R. GIBSON
Postmaster General,          )
U.S. POSTAL SERVICE,          )
           )
Defendant.          )

## MEMORANDUM OPINION AND ORDER

### I.     Introduction

This matter comes before the Court upon consideration of Defendant's motion for summary judgment. Plaintiff, Hillary A. Kacian ("Kacian") filed a complaint pursuant to Title VII of the Civil Rights Act of 1964, alleging that agents of the Defendant subjected her to unwelcomed sexual harassment and ultimately terminated her in retaliation for reporting this conduct. (ECF No. 1 at 1). Defendant now brings a motion for summary judgment, asking the Court to find that Plaintiff has not established a prima facie case of retaliation, and that Plaintiff was terminated based upon a serious safety infraction. (ECF No. 38 at 1–2).

For the reasons given below, and in consideration of the prevailing law, the Court will grant Defendant's motion for summary judgment.

## II.    Jurisdiction

The Court exercises subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's Title VII claim arises under the laws of the United States. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) because both Defendant resides within the district and a substantial portion of the events giving rise to the claims occurred in this judicial district.

## III.    Background

### a.    Procedural

The underlying complaint was filed in this Court on May 16, 2012. (ECF No. 1). Defendant filed a previous motion for summary judgment (ECF No. 25), alleging that suit in this Court should be barred because Plaintiff had failed to exhaust her administrative remedies. The Court denied that motion for summary judgment. (ECF No. 36). The Defendant has now filed the instant motion for summary judgment (ECF No. 37), and the motion is ripe for disposition.

### b.    Factual

Plaintiff asserts that certain facts set out in Defendant's statement of undisputed material fact are, in fact, disputed. (ECF No. 40 at 1). The Court will set out the facts that are undisputed by the parties.

Plaintiff Hillary Kacian ("Kacian") is a 28-year-old female from Johnstown, Pennsylvania, who was hired by the Postal Service on March 29, 2008, as a City Carrier (Transitional Employee ("TE")) with a duty station located at the Johnstown Post Office. (ECF No. 39 at ¶¶ 1, 3). Kacian testified that TEs are hired pursuant to one-year contracts

that could be renewed each year, and that each year she would get laid off for five days and then rehired under another one-year contract. (*Id.* at ¶¶ 4, 5). Kacian worked continuously at the Postal Service from March 2008 through August 2011, aside from these short layoffs. (*Id.* at ¶ 6). Kacian was a member of the National Association of Letter Carriers Union which entitled her to union representation. (*Id.* at ¶ 7). Kacian received a three-day training course prior to operating a postal vehicle, which was part of her city carrier duties and made her aware of all the safety rules, including driving with a seat belt, driving without distractions, and driving with the vehicle's door closed. (*Id.* at ¶¶ 8–9).

Kacian was involved in at least four accidents during her postal career. (*Id.* at ¶ 10). On June 27, 2008, Kacian failed to check her clearances and backed her postal vehicle into a privately owned vehicle on Rosewood Street. She was determined to be at fault. (*Id.* at ¶ 11). On January 17, 2009, Kacian's postal vehicle was struck by a privately owned vehicle that failed to stop at a red light and ran through an intersection. She was not determined to be at fault. (*Id.* at ¶ 15). On January 9, 2010, Kacian's postal vehicle was legally parked when it was struck by a snowplow truck that failed to check clearances while backing up. Kacian was not at fault. (*Id.* at ¶ 16). On December 7, 2010, Kacian sprained her ankle after slipping on icy steps during a home delivery on her carrier route. (*Id.* at ¶ 17).

Kacian alleges that she was a victim of sexual harassment while working for the Postal Service. She listed all of the acts of sexual harassment that form the basis of her claim in an interrogatory response. (*Id.* at ¶ 18). The allegations are as follows:

**George LaRue**
• He asked Ms. Kacian for a copy of a picture of her in a white bikini. When she refused, he repeatedly hounded her for the picture until she was forced to rebuke him in an overt fashion.
• When Ms. Kacian [had] a cold sore, he made a sexual reference to her having herpes.
• On one occasion when she told a fellow carrier that her knee hurt, he made a sexual reference to her about staying off her knees.
• He harassed Ms. Kacian about the length of her shorts even though her shorts were a full inch and a half longer than required.
• He often made comments about her need to lose weight.
• He often assigned Ms. Kacian more work than she could handle. Ms. Kacian avers that this was a result of her refusal to provide him with pictures of her in a bikini.

(*Id.*). Sometime in April 2010, Kacian brought pictures to work from her vacation to Las Vegas, one of which depicted her in a white bikini. (*Id.* at ¶¶ 19–20). Kacian showed these pictures to at least five work colleagues that included both males and females. (*Id.* at ¶ 21). According to Kacian's testimony, George LaRue ("LaRue") looked at them and, while referencing the bikini picture, allegedly stated: "I like this picture, you should get me a copy of that." (*Id.* at ¶ 24). She stated that she initially "just laughed and was, like, whatever. I just didn't think anything about it." (*Id.* at ¶ 25). According to Kacian, LaRue asked her for a copy of the picture two more times before the incident ended. (*Id.* at ¶ 26). She did not immediately bring this incident to the attention of any supervisor within the Postal Service. (*Id.* at ¶ 27).

Kacian testified that she reported to work a couple of weeks later with a cold sore on her lip, and that LaRue looked at her and said "Oh, looks like you got something on your lip. You might want to get that checked out." (*Id.* at ¶¶ 28–29). Kacian "just ignored him and walked away." (*Id.* at ¶ 30). She testified that LaRue never used the word

"herpes" and did not make any additional comments about the cold sore. (*Id.* at ¶¶ 31–32). Further, Kacian testified that she did not immediately bring this incident to the attention of any supervisor within the Postal Service. (*Id.* at ¶ 33).

During the summer of 2010, Kacian testified that she fell while delivering mail and scraped her knee. (*Id.* at ¶ 34). She alleges that LaRue laughed and stated "[s]omething along the lines of I should stay off my knees." (*Id.* at ¶ 35). Kacian testified that she took the statement to be a sexual comment because of the manner in which he said it and the fact that he was laughing about it. (*Id.* at ¶ 36). She stated that the comment was made by the time clock and that a "whole bunch of people" were present when the comment was made. (*Id.* at ¶ 37).

Sometime during the summer of 2010, Kacian was approached by a female carrier, Melissa, regarding the length of her shorts. (*Id.* at ¶¶ 40, 44). Kacian became "very upset," and told her that if LaRue had a problem with her shorts being regulation, she should have been told by him or another supervisor that they were not regulation. (*Id.* at ¶ 40). LaRue later approached Kacian and asked if Melissa had spoken to her about her shorts, to which Kacian responded "[y]eah and they're regulation, and if you had a problem with them, then you should have said something or had someone say something to me. And then that was the end of that." (*Id.* at ¶ 41). LaRue testified that one of his responsibilities as supervisor was to make sure that a carrier's personal appearance and uniform were within regulations. (*Id.* at ¶ 42).

Kacian alleges that sometime in March or April 2011, LaRue said the following to her about her weight: "Looks like you're getting a little hefty there. Maybe you should do

something about it." (*Id.* at ¶ 45). She stated that she did not report this incident, but rather ignored it and walked away. (*Id.* at ¶ 46). While the comment was made on the workroom floor, she did not know if anyone had overheard it. (*Id.* at ¶ 47).

Finally, Kacian alleges that LaRue assigned her more mail deliveries than she could handle within the hours she was permitted on the streets, and that these assignments grew increasingly worse. (*Id.* at ¶ 49). She testified that she would occasionally receive help when she called in and asked for help, though sometimes LaRue would tell her she needed to get it done. (*Id.* at ¶ 50). Kacian stated that the extra mail deliveries came from other vacant routes, and that "other employees were given additional work as well, because the route was divided into numerous sections." (*Id.* at ¶ 51).

Kacian was given additional mail to take out by Supervisor Hauser on or about July 14, 2011. (*Id.* at ¶ 52). When Kacian became upset, she was taken into a conference room by Supervisor Hauser and Union Representative Sarosi for a meeting to discuss her work performance. (*Id.* at ¶ 53). She testified that she told Supervisor Hauser at the meeting that she was "tired of all this sexual harassment, given too much work that we can't do, being treated like dogs." (*Id.* at ¶ 54). Kacian claims that her meeting with Supervisor Hauser is the "protected activity" underlying her retaliation claim. (*Id.* at ¶ 55). She stated that she was not aware of any written record or recording of the meeting. (*Id.* at ¶ 56). Union Representative Sarosi indicated that he did have some notes about the meeting, but since the incident was over two years ago, he could no longer find them. (*Id.*

at ¶ 58). Kacian further testified that she did not recall any specific incident of sexual harassment that she might have told Supervisor Hauser at the meeting. (*Id.* at ¶ 57).

On July 19, 2011, Supervisors George LaRue and Cheryl Cernetich were conducting driver observations of their postal carriers on the streets of Johnstown, Pennsylvania. (*Id.* at ¶ 60). Supervisor Cernetich was driving while Supervisor LaRue was riding in the passenger seat so he could record the driving observations. (*Id.* at ¶ 61). Among the purposes for conducting driver's observations are assessing the efficiency of mail routes and ensuring that carriers are delivering mail safely, correctly, and within appropriate Postal Service standards. (*Id.* at ¶ 63). Supervisor LaRue testified that while he was performing driver observations on July 19, 2011, he encountered Kacian as follows:

> Me and the other supervisor [Cheryl Cernetich] were just out doing driver's observations. We so happened to come down the alleyway and [Plaintiff] was right there . . . She was pulling out of the YMCA parking lot, crossed three lanes of traffic, her door wide open, and no seatbelt on.

(*Id.* at ¶ 66). Supervisor Cernetich testified that her observation of Plaintiff on July 19, 2011 was by "coincidence," as she was "driving out of an alley en-route to observe another carrier when [she] saw Ms. Kacian commit a safety infraction by driving across three lanes of traffic with her door open and without wearing a seatbelt." (*Id.* at ¶ 67). Supervisor Cernetich testified that safety violations of this type are "fairly egregious actions" that could lead to discipline or removal depending upon the employee. (*Id.* at ¶ 68). Kacian admits that these statements were made by Supervisor Cernetich, but denies that they are undisputed. (ECF No. 40 at ¶¶ 67–68). Supervisor LaRue completed and signed an

"Observation of Driving Practices" form stating that Plaintiff "crossed intersection with no seat belt and door open." (*Id.* at ¶ 69). Supervisors Cernetich and LaRue stopped Kacian out on the route and spoke with her about this safety violation. (*Id.* at ¶ 70). Supervisor LaRue recommended that Kacian receive a Pre-Disciplinary Interview ("PDI") as a result of her safety violation while driving. (*Id.* at ¶¶ 71). Kacian admitted that she drove across an intersection with her vehicle door open. (*Id.* at ¶ 72). Upon returning to the Post Office, Kacian attended a PDI with her union representative to discuss the observation and provide her explanation of the incident. (*Id.* at ¶ 73).

After Kacian's PDI, Supervisor LaRue issued a report recommending that Kacian be removed. (*Id.* at ¶ 77). Article 16 of the memorandum of understanding between the Postal Service and union provides the following with regard to TEs:

> Transitional employees may be separated at any time upon completion of their assignment or for lack of work. Such separation is not grievable except where the separation is pretextual.
> Transitional employees *may otherwise be removed for just cause* and any such removal will be subject to the grievance-arbitration procedure . . . in any such grievance, the concept of progressive discipline will not apply. The issue will be whether the employee is guilty of the charge against him or her. Where the employee is found guilty, the arbitrator shall not have the authority to modify the discharge. In the case of removal for cause, a transitional employee shall be entitled to advance written notice of the charges against him/her in accordance with the provisions of Article 16 of the National Agreement.

(*Id.* at ¶ 81). Further, Article 16, Section 8 of the National Agreement between the Postal Service and the union states that "[i]n no case may a supervisor impose suspension or discharge upon an employee unless the proposed disciplinary action by the supervisor has first been reviewed and concurred in by the installation head or designee." (*Id.* at ¶

84). After reviewing the information submitted for Kacian's recommended removal, Postmaster Olsavsky concurred and forwarded the package to Labor Relations who was responsible for typing up the formal Notice of Removal letter. (*Id.* at ¶¶ 85, 87). On July 21, 2011, Kacian was issued a Notice of Removal letter that stated the following grounds for removal:

> **UNACCEPTABLE WORK PERFORMANCE/UNSAFE ACT**
> You are charged with unacceptable work performance. Specifically you are charged with working in an unsafe manner. July 19, 2011, you were observed operating your LLV with the driver's door open and not wearing your seat belt. You failed to work in a safe manner.

(*Id.* at ¶ 88). Union Representative Sarosi testified as follows:

> A. . . . After she made the allegations, I guess Mr. Houser must have said something to Mr. LaRue or one of the other supervisors, and then they went out and followed her on the street, and they found her driving without her seat belt on driving through an intersection with her door open.
> Q. Do you know that for a fact, or are you just assuming?
> A. I'm just assuming because there was no - - she never had anybody follow her on the street before. This all came after she made that allegation to Mr. Houser. It might have went through the chain, I'm not sure. It's just my assumption.

(*Id.* at ¶ 93). EEO Specialist Rosemary Taddeo first notified the Johnstown Post Office Supervisors in an e-mail dated August 3, 2011 that Kacian was receiving EEO pre-complaint counseling for a sexual harassment allegation. (*Id.* at ¶ 95). Kacian's union agreed "that the Notice of Removal dated July 21, 2011 for Transitional Carrier Hillary Kacian was for just cause." (*Id.* at ¶ 96). Kacian acknowledged that when she was hired by the Postal Service, she knew that TEs could be terminated for any just-cause reason. (*Id.* at ¶ 97). She acknowledged that the Postal Service was not "concocting" a story with regard

to her safety violation. (*Id.* at ¶ 98). When asked to provide reasons why she thought her removal was the result of discrimination or unlawful retaliation, Kacian testified as follows:

> There was nobody else that has gotten fired for driving with their door open [and] . . . Because I made a stink about it. I opened my mouth. They didn't like it. They wanted to get rid of me and, unfortunately, I gave them a reason to get rid of me.

(*Id.* at ¶ 99).

On July 22, 2011, the day after the receipt of her removal notice, Kacian contacted the EEO Office to make a sexual harassment claim and initiate proceedings. (*Id.* at ¶ 103). EEO Specialist Taddeo stated that EEO contacts to initiate proceedings and discuss claims of discrimination are confidential matters that the EEO Office does not disclose to management. (*Id.* at ¶ 104). Kacian and Postal Service management entered into a settlement on August 24, 2011 to resolve her EEO concerns. (*Id.* at ¶ 105).

In a letter dated September 16, 2011, Kacian's attorney alleged that the Postal Service breached the settlement agreement and requested that the agency set aside the agreement and reinstate the EEO Investigation. (*Id.* at ¶ 106). In a decision dated March 21, 2012, the EEOC found "that the settlement agreement at issue herein [was] void for lack of consideration" and ordered that the case be remanded for further proceedings. (*Id.* at ¶ 107). Kacian initiated this lawsuit by filing a Complaint in this Court on May 16, 2012. (*Id.* at ¶ 108, citing ECF No. 1).

After searching the EEO database for cases dating back to 2008, EEO Specialist Taddeo confirmed that there has only been one EEO claim of sexual harassment against

Supervisor LaRue, and that the claim was the one at issue in this case, initiated by Kacian on July 22, 2011. (*Id*. at ¶ 110). After checking the EEO database for cases dating back to 2008, EEO Specialist Taddeo confirmed that there have been no other allegations of sexual harassment initiated or filed against any supervisors at the Johnstown Post Office. (*Id*. at ¶ 111).

Supervisors are given discretion to decide whether or not to impose discipline for safety infractions depending on the severity of the infraction. (ECF No. 40 at ¶ 11). Postmaster Olsavsky testified that an individual's history is also considered. (ECF No. 43 at ¶ 11). While there was no progressive discipline available to transitional employees, the union and management could negotiate a lesser penalty. (ECF No. 40 at ¶ 29). Kacian testified that she never reported George LaRue's harassment prior to July 14, 2011 because she was a transitional employee and was afraid to lose her job. (*Id*. at ¶ 29).

LaRue repeatedly confirmed that he did not rely upon Kacian's prior accident history in determining whether to discipline her. (ECF No. 40 at ¶ 39) ("It basically was this. What she did here." *Id*. at 30:7-10) ("No, actually . . . I looked at her history of accidents but other than that I didn't use that to really determine the fact that the accident, what she did here." *Id*. at 30:13-18) ("I didn't use that to make my determination on this.").

IV.    **Legal Standard**

   a.  **Summary Judgment Standard**

Summary judgment should be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those affecting the outcome of trial. *Id.* at 248. The court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581. (3d Cir. 2009). "In making this determination, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (internal citation and quotation omitted). The moving party must initially demonstrate the absence of any genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must go beyond the pleadings, using affidavits, depositions, admissions, or answers to interrogatories to show genuine issues of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in the pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

### b. Retaliation

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v.*

*City of Philadelphia,* 461 F.3d 331, 340–341 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995)).

Regarding the first element, "the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause")." *Id.* at 341 (citing *Slagle v. County of Clarion,* 435 F.3d 262, 266 (3d Cir.2006). "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id.* (citations omitted). Furthermore, "the employee's 'opposition' to unlawful discrimination must not be equivocal." *Id.* (citing *Barber v. CSX Distribution Servs.,* 68 F.3d 694, 702 (3d Cir.1995)).

Regarding the second element, the Supreme Court has held "that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)).

Finally, "a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 341–42. The third element "'identif[ies] what harassment, if any, a reasonable jury could link to a retaliatory animus.'" *Id.* at 342 (citing *Jensen v. Potter,* 435 F.3d 444, 449–50 (3d Cir.2006)).

"If the employee establishes this *prima facie* case of retaliation, the familiar *McDonnell Douglas* approach applies in which 'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.* at 342 (quoting *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500-01 (3d Cir.1997)).

To survive a motion for judgment in the employer's favor, Kacian must therefore produce some evidence from which a jury could reasonably reach the above conclusions. *Id.* at 342 (citing *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994)).

V.    **Analysis**

a.  **Prima facie case of retaliation**

Defendant argues that Kacian cannot establish a *prima facie* case of retaliation because "she cannot satisfy the causal connection element that requires a showing that the two decision-makers in her case, Supervisors George LaRue and Postmaster Mike Olsavsky, had knowledge of her sexual harassment complaint prior to making their removal decision." (ECF No. 38 at 4). Defendant relies on the record showing that Kacian's removal was based not on her sexual harassment complaint, but rather on her supervisors' observation of her committing a safety infraction "by crossing over three lanes of traffic with her postal vehicle door open and without wearing a seatbelt." (*Id.* at 5, citing ECF No. 39 at ¶¶ 60, 62, 64–67). Defendant also asserts that the record evidence refutes Kacian's suggestion that her supervisors were out to target Kacian based on their

alleged knowledge of her prior sexual harassment complaint. (*Id., citing, e.g. ECF No. 39 at ¶¶ 65, 67*). Defendant relies on testimony by both Kacian's supervisors as well as Postmaster Olsavsky to demonstrate than none of them had knowledge of Kacian's sexual harassment complaint to Supervisor Hauser. (*Id.* at 6).

Kacian responds that while Supervisor LaRue denies having knowledge of her protected activity, "a reasonable jury certainly can find that the circumstances of the instant case suggest that this denial is untruthful." (ECF No. 42 at 8). Kacian argues that just as Union President Sarosi may have made an assumption when he testified that Supervisor Hauser must have said something to LaRue, so could a reasonable person, such as a juror, reach the same conclusion upon examining the circumstances. (*Id.*). In addition, Kacian states that under Third Circuit precedent, even if the ultimate decision maker does not hold a discriminatory animus against an employee, it is sufficient to find an employer liable for a discriminatory termination when "'those exhibiting discriminatory animus influenced or participated in the decision to terminate.'" (*Id.*, citing *McKenna v. City of Philadelphia*, 649 F.3d 171, 176 (3d Cir. 2011) (quoting *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001)). Kacian argues that since LaRue was the driving force behind the decision, a jury's finding that LaRue was motivated by a retaliatory animus against Ms. Kacian is sufficient to find the Defendant liable. (*Id.* at 9).

The Court finds no genuine dispute of material fact on this point. Kacian has cited no evidence, other than mere speculation based on Union Representative Joseph Sarosi's testimony, that supports a finding that Supervisor LaRue had knowledge of her sexual

harassment claim. The testimony relied on by Defendant in his statement of undisputed material fact states that Supervisors LaRue and Postmaster Oslavsky did not have knowledge of Kacian's complaint to supervisor Hauser. ([ECF No. 39 at ¶ 76](ECF No. 39 at ¶ 76)). Though Kacian denies that this testimony is undisputed, the Court finds that based on consideration of the facts as alleged, there is no indication that Supervisors LaRue or Cernetich had knowledge of her sexual harassment claim.

### b. Objective reasonability

Defendant further argues that Kacian cannot establish that her sexual harassment complaint was objectively reasonable, because her complaint is based on a small number of incidents made over an extended 15-month period of time. ([ECF No. 38 at 7](ECF No. 38 at 7)). Defendant asserts that "the activity was more akin to typical workplace annoyances and teasing that is not uncommon for a work floor of a busy post office." (*Id.*). As noted above, Title VII's anti-retaliation provision "protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause")." *Moore,* 641 F.3d at 341. Defendant asserts that this is an opposition clause case where Kacian "claims retaliation because she voiced her opposition to alleged sexual harassment activity within the workplace." ([ECF No. 38 at 7](ECF No. 38 at 7)).

Kacian argues that it is difficult to classify Supervisor LaRue's requests three separate requests for a copy of a picture of her in a bikini "as being motivated by anything other than sexual desire when a picture of Ms. Kacian in a bikini was the object of LaRue's desire." ([ECF No. 42 at 4](ECF No. 42 at 4)). Thus, Kacian concludes that a reasonable person in her position

"certainly could hold a good-faith belief that he or she had suffered sexual harassment from this incident alone." (*Id.* at 4–5). Further, Kacian argues that an objectively reasonable person also could find that LaRue's comments about a cold sore and about her staying off of her knees are indicative of sexual harassment. (*Id.* at 5). Finally, Kacian asserts that LaRue's comments about the length of her shorts and LaRue's resistance when she called for assistance on a route are further indications that LaRue was targeting her out of resentment for the picture incident. (*Id.* at 5–6). She argues that her delay in reporting the bikini incident does not make her report of harassment any less reasonable, but rather reflects her fear of the type of retaliation alleged in the instant case. (*Id.* at 6–7).

The employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. *Moore*, 461 F.3d at 341. "[I]f no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected." *Wilkerson v. New Media Technology Charter School, Inc.*, 522 F.3d 315, 322 (3d Cir. 2008). "'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted)). Courts must "'determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88 (1998) (quoting *Harris,* 510 U.S. at 23). Furthermore "Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Id.* at 788 (quoting *Oncale,* 523 U.S. at 81). The Supreme Court has further emphasized that "simple teasing," offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." *Id.* (internal citations omitted). The object of these standards is to "ensure that Title VII does not become a 'general civility code.'" *Id.,* quoting *Oncale,* 523 U.S. at 80. They will ensure that complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are filtered out. *Id.,* quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992) (footnotes omitted).

The Court finds no genuine dispute of material fact as to whether or not the sexual harassment claim was objectively reasonable. The totality of the circumstances does not establish that Supervisor LaRue's off-hand comments were necessarily of a sexual nature. The conduct alleged is not so severe and pervasive as to alter the conditions of Kacian's employment and create an abusive working environment. *See Clark County v. Breeden,* 532 U.S. 268, 271 (2001). The Court finds that the comments that Kacian alleges amount to sexual harassment are more in the nature of the "ordinary tribulations of the workplace," and are therefore not sufficiently severe to amount to sexual harassment.

The first incident occurred in April 2010 when Kacian brought photos of her wearing a bikini swimsuit to work. (ECF No. 39 at ¶¶ 19, 20). By her own admission, Kacian did not think much of it when Supervisor LaRue asked her for a copy of the picture. (*Id.* at ¶¶ 24, 25). After asking for the photo two more times, the incident ended. (*Id.* at ¶ 26). This incident on its own is not a sufficient basis for a claim of sexual harassment.

Further, the Court finds the incident involving Supervisor LaRue's comment about the cold sore on Kacian's lip to be in the nature of an off-hand comment. (*Id.* at ¶ 28). The comment was not repeated, and did not involve language of a sexual nature. The third comment occurred several weeks or months later when Kacian alleged that Supervisor LaRue laughed at her scraped knee and stated "something along the lines of I should stay off my knees." (*Id.* at ¶ 35). While Kacian alleges that the comment was of a sexual nature, the Court again finds that the comment was not sufficiently severe or pervasive as to forms the basis of actionable sexual harassment. The Court notes that Title VII is not to be a "general civility code." *Oncale,* 523 U.S. at 80. The comment could equally reasonably have been meant in a joking manner. Supervisor LaRue's comment about Kacian's weight also does not rise to a level sufficiently severe to amount to actionable sexual harassment. (*Id.* at ¶ 45). The Court recognizes that employees may make off-hand comments in the workplace that are not so severe and pervasive as to create a hostile work environment.

Finally, Kacian's allegations regarding the length of her shorts and her heavy workload do not suffice to establish a claim of retaliation for her reporting a sexual harassment claim. The Court does not find that Supervisor LaRue singled Kacian out to

point out that the length of her shorts was not regulation length. LaRue testified that, as a supervisor, one of his responsibilities includes making sure that a carrier's personal appearance and uniform are within regulations. (ECF No. 39 at ¶ 42). The Court is satisfied that LaRue's actions in drawing attention to the length of Kacian's shorts simply fell within the realm of his supervisory duties. In addition, by Kacian's own admission, other employees had also been assigned extra mail deliveries that came from vacant routes. (*Id.* at ¶ 51). This admission amounts to a recognition that Kacian was not necessarily singled out to perform a heavier workload simply because of her sexual harassment claim. The Court finds no genuine dispute of material fact on this point.

The Court must consider the totality of instances of sexual harassment alleged by Kacian in determining whether she held an objectively reasonable belief that the conduct was unlawful. The Court finds that the small number of incidents, as well as the nature of the incidents, all suggest that a reasonable person would not hold that Kacian had been a victim of sexual harassment. Rather, the incidents of which Kacian complains are in the nature of ordinary workplace banter and off-hand comments. Mindful of the fact that Title VII is not intended to be turned into a "general civility code," the Court finds that there is no genuine dispute of material fact on this issue, and that summary judgment should therefore be granted in Defendant's favor.

### c. Legitimate, non-discriminatory reasons supporting Kacian's removal

Defendant argues that there are legitimate, non-discriminatory reasons for Defendant's actions, namely Kacian's "unacceptable work performance" and her commission of an "unsafe act" as articulated by Defendant in the Notice of Removal letter

dated July 21 2011. (ECF No. 38 at 14). The safety violation was committed by Kacian when she drove her postal vehicle across three lanes of traffic with her door open and without wearing a seatbelt, while being observed by two eyewitnesses, Supervisors George LaRue and Cheryl Cernetich. (*Id.* at 14–15). Defendant argues that he has satisfied the "relatively light" burden of articulating a legitimate, non-discriminatory reason for its removal decision. (*Id.* at 15). Kacian counters that Defendant's articulated reasons are mere pretext. The Third Circuit has articulated the following basic framework under Title VII:

> [T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Consequently, the Third Circuit stated that:

> [A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.

*Id.* Regarding the quantum of evidence required to be shown by the Plaintiff, the Third Circuit found the following:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons, was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

*Id.* (international citations omitted).

The Court does not find that Kacian's dismissal for poor work performance was mere pretext or a *post hoc* fabrication. As the undisputed facts show, Kacian had previously been involved in a work-related accident, which she was found to be at fault for. (ECF No. 39 at ¶ 11). Further, Kacian was ultimately terminated for working in an unsafe manner, an incident which was observed by her two supervisors. (*Id.* at ¶¶ 66, 88). Kacian does not dispute that the incident on July 19, 2011 occurred, and that it was observed by her supervisors. (*Id.* at ¶ 72). Defendant states that Kacian was observed performing her work in an unsafe manner while her supervisors were out observing another employee. (*Id.* at ¶ 65). Regardless of whether or not Supervisors LaRue and Cernetich deliberately set out to monitor Kacian, the Court does not find that Defendant's reasons for firing Kacian amounted to mere pretext. Defendant has shown that Kacian's safety infraction on July 19, 2011 was a legitimate, non-discriminatory reason for her removal from employment. Thus, in consideration of Kacian's earlier at-fault accident and the later safety infraction for which she was ultimately terminated, the Court finds that Defendant has satisfied its burden of establishing that his reason for firing Kacian did not amount to mere pretext.

**VI.    Conclusion**

Upon consideration of the facts as alleged by the parties, the Court finds that there is no genuine dispute of material fact and that judgment should be granted in favor of Defendant. Kacian has not established a *prima facie* case of retaliation, and has not established that Defendant's reasons for removal constituted mere pretext. Defendant's motion for summary judgment will therefore be granted.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILLARY A. KACIAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 3:12-cv-102** |
| | ) | |
| **PATRICK R. DONAHOE,** | ) | **JUDGE KIM R. GIBSON** |
| **Postmaster General,** | ) | |
| **U.S. POSTAL SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

AND NOW, this 27th day of March, 2015, upon consideration of Defendant's motion for summary judgment (ECF No. 37), the Court **HEREBY ORDERS** that the motion for summary judgment is **GRANTED.**

BY THE COURT:

KIM R. GIBSON

23