IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HILLARY A. KACIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:12-cv-102 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| MEGAN J. BRENNAN, | ) | |
| Postmaster General, | ) | *(Electronic Filing)* |
| U.S. Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION IN LIMINE TO EXCLUDE CERTAIN
<u>TESTIMONY OF WITNESS RANDY HAMONKO</u>**

**I.   INTRODUCTION**

Plaintiff has filed a witness list indicating that she intends on introducing the testimony of witness Randy Hamonko.  *See* Plaintiff's Witness List (Dkt. No. 58).  Mr. Hamonko is a former city carrier at the Johnstown Post Office and longtime boyfriend of Plaintiff.  For the reasons set forth below, certain testimony of witness Hamonko should be excluded.

**II.   TESTIMONY REGARDING MR. HAMONKO'S ADMINISTRATIVE LEAVE
AND SUBSEQUENT REINSTATEMENT SHOULD BE EXCLUDED**

Randy Hamonko and Plaintiff began dating sometime in 2010, and they currently live together in New Orleans, Louisiana.  Attachment A (Hamonko Deposition Excerpts) at pp. 8-9.  Like Plaintiff, Mr. Hamonko was a transitional employee at the Johnstown Post Office, where he primarily worked as a city carrier.  Mr. Hamonko has no personal knowledge of any of the events surrounding Plaintiff's retaliation claim.  He cannot offer testimony regarding Plaintiff's meeting with Supervisor Hauser where she complained of harassment; he cannot offer testimony regarding Plaintiff's subsequent driving infraction; and he cannot offer testimony regarding the

Pre-Disciplinary Interview or any of the events surrounding Plaintiff's removal. As Mr. Hamonko stated in his deposition, the only action that he personally witnessed was an incident of sexual harassment which the parties have already agreed is not relevant nor permitted to be discussed during trial. Att. A at p. 17; Joint Stipulations of the Parties (Dkt. No. 64 at ¶ 2). Accordingly, the Court should limit Mr. Hamonko's testimony *only* to the alleged emotional distress that he allegedly observed in Plaintiff after her termination. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Additionally, Plaintiff has stated that she will attempt to have Mr. Hamonko "testify regarding his placement on administrative leave that occurred shortly after Ms. Kacian's termination." Dkt. No. 58. On August 12, 2011 (weeks after Plaintiff's infraction and removal notice), Mr. Hamonko failed to process 91 pieces of outgoing mail. Att. B (Hamonko Removal Notice). Because he was a transitional employee with no right of progressive discipline, Mr. Hamonko was issued a notice of removal on August 18, 2011, and was placed on administrative leave. *Id.* Mr. Hamonko and the union were then able to negotiate his reinstatement, but he subsequently chose to voluntarily resign. Att. A at p. 12. Plaintiff indicates that she is attempting to introduce this evidence "to show a pattern of antagonism directed at Ms. Kacian." Doc. No. 57 (Pl.'s Pretrial Statement).[1]

---

[1] Evidence of a "pattern of antagonism" typically arises in cases where such a pattern occurs during the intervening period between a plaintiff's assertion of protected activity and the adverse employment decision. *See, e.g., Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997); *Robinson v. SEPTA,* 982 F.2d 892 (3d Cir. 1993); *see also Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir. 1997) (circumstantial evidence of a pattern of antagonism following protected activity offered to establish the causation element of a prima facie case of retaliation must allow the fact-finder to infer "that [the plaintiff's] protected activity was the likely reason for the adverse action.") (emphasis added). During this intervening period, a pattern of antagonism may be probative of the causation element in a retaliation charge. *Id.* Obviously, the

The Court should preclude the exhaustive testimony regarding Mr. Hamonko's infraction and subsequent discipline. This testimony is referred to as "me too" evidence[2] and is often used by plaintiffs in an attempt to inflame the jury, sidetrack them from the core issue in the case, and cast unwarranted attacks upon the employer. The standard for "me too" evidence was stated by the Third Circuit in *Mandel*, where the Court indicated that such evidence in an employment discrimination case is neither *per se* admissible nor *per se* inadmissible. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167–68 (3d Cir. 2013); *Bumbarger v. New Enterprise Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801, 823 (W.D. Pa., 2016) (J. Gibson). "Rather, 'the question of whether evidence of discrimination against other employees by other supervisors is relevant is fact based and depends on several factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Id.* (quoting *Mandel,* 706 F.3d at 167–68). In evidentiary rulings of this type, the Third Circuit affords "broad discretion" to the district court. *Id.*

---

timing of Mr. Hamonko's placement on administrative leave (*i.e.,* weeks after Plaintiff's termination notice) precludes the use of "pattern of antagonism" evidence in this manner.

[2] The Supreme Court has defined "me-too" evidence as "testimony by nonparties alleging discrimination at the hands of persons who played no role in the adverse employment decision challenged by the plaintiff." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 383 (2008). At least one circuit, the Sixth Circuit, has held that "'me too' evidence . . . is unwelcome because it is at best only slightly relevant and is always highly prejudicial to the defendant." *Jones v. St. Jude Medical S.C., Inc.*, 823 F. Supp. 2d 699, 734 (S.D. Ohio 2011) (citing *Schrand v. Fed. Pac. Elec. Co*., 851 F.2d 152, 156 (6th Cir. 1988)).

Here, there are a number of factors that warrant exclusion of Mr. Hamonko's employment case. First, Mr. Hamonko's removal notice was issued several weeks *after* Plaintiff's removal notice, thereby precluding Plaintiff from arguing that her circumstances were somehow connected to her boyfriend's removal in August 2011. Second, aside from being boyfriend and girlfriend, there is little connection between the two cases. Mr. Hamonko's situation involved the failure to process mail, resulting in the issuance of a removal notice by Supervisor Jeff Hauser. Att. B. On the other hand, Plaintiff's case involves a driving infraction where she was issued a removal notice by an entirely different supervisor, George LaRue. Mr. Hamonko was ultimately retained by the Postal Service (although he later voluntarily resigned), whereby Plaintiff's case ended in permanent removal. Third, both cases involve different theories. Plaintiff's case originated with a sexual harassment claim and evolved into a theory of how Supervisor LaRue allegedly wanted her removed from the Postal Service presumably to avoid any adverse consequences from the alleged sexual harassment allegations. Mr. Hamonko's case had nothing to do with retaliation of this sort and was simply related to discipline for failing to timely deliver the mail. Finally, permitting collateral evidence of Mr. Hamonko's removal case would unnecessarily sidetrack the jury, add no probative value to the determination of Plaintiff's retaliation charge, and result in undue prejudice to the Defendant. Fed. R. Evid. 401, 403; *see also Gay v. Petsock,* 917 F.2d 768, 773 (3d Cir. 1990) (stating that a court has broad discretion to exclude evidence that is merely collateral to the issues in the case). Accordingly, Defendant requests the exclusion of all evidence regarding Mr. Hamonko's discipline, placement on administrative leave, reinstatement, and voluntary resignation. Once

again, he should only be permitted to testify regarding his personal knowledge of any emotional distress that Plaintiff suffered following her termination.

                Respectfully submitted,

                SOO C. SONG
                Acting United States Attorney

                s/Paul D. Kovac
                PAUL D. KOVAC
                Assistant U.S. Attorney
                Western District of Pennsylvania
                Joseph F. Weis, Jr. U.S. Courthouse
                700 Grant Street, Suite 4000
                Pittsburgh, PA 15219
Dated:  February 21, 2017        (412) 894-7489

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Defendant's Motion in Limine and Brief in Support (Exclude Certain Testimony of Witness Hamonko) was electronically filed and/or mailed, postage-prepaid, this 21st day of February, 2017, to the following:

>Adam R. Gorzelsky, Esquire
>Williams Law Offices
>101 North Main Street, Suite 106
>Greensburg, PA 15601

>s/Paul D. Kovac
>PAUL D. KOVAC
>Assistant U.S. Attorney