**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HILLARY A. KACIAN,** | ) | **Case No. 3:12-cv-102** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MEGAN J. BRENNAN,** *in her official* | ) | |
| *capacity as Postmaster General of the* | ) | |
| *United States Postal Service*, | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION**</u>

On May 16, 2012, Hillary A. Kacian filed this case against the Postmaster General of the

United States Postal Service ("Postmaster General") for retaliation under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-5(g).[1]   Kacian is a former Postal Service employee and

alleges she was fired in retaliation for reporting her supervisor's sexual harassment.  Trial is

scheduled to begin on March 13, 2017.

Currently pending before the Court are several motions in limine.  Specifically, Kacian

has moved to exclude at trial any evidence of her accident history or safety record from her

employment with the Postal Service (ECF No. 65) as well as any evidence about the termination

of Postal Service employees who were not based out of the Johnstown Office (ECF No. 67).  The

Postmaster General has moved to exclude certain testimony by two of Kacian's witnesses,

Randy Hamonko and Joseph Sarosi.  (ECF Nos. 70, 72.)  In addition, Kacian has objected to

three of the Postmaster General's witnesses and seeks their exclusion.  (ECF No. 76.)

---

[1] Kacian's complaint also included a claim of hostile work environment, but this claim was dismissed by
stipulation.  (ECF No. 17.)

For the reasons below, the Court holds as follows: Kacian's objections to the Postmaster General's witness list are **GRANTED IN PART**. Kacian's motion to exclude any evidence regarding her accident history or safety record from her employment with the Postal Service is **DENIED**. Kacian's motion to exclude any evidence about the termination of non-Johnstown-based Postal Service employees is **DENIED**. And the Postmaster General's motions to exclude certain testimony by Randy Hamonko and Joseph Sarosi are **DENIED**.

## I.      Background

In March 2008, Kacian began working for the Johnstown Post Office as a letter carrier. She alleges that in 2010 her supervisor, George LaRue, began sexually harassing her. On July 14, 2011, Kacian complained to Union President Joseph Sarosi and her supervisor Jeff Hauser about LaRue's harassment. Several days later—on July 19, 2011—LaRue observed Kacian while she was on a delivery route. LaRue saw Kacian drive across an intersection with her vehicle door open. After making this observation, LaRue filed a disciplinary action against Kacian and recommended her termination. Kacian was fired effective August 21, 2011.

## II.     Analysis

Pending before the Court are four motions in limine—two by Kacian (ECF Nos. 65, 67) and two by the Postmaster General (ECF Nos. 70, 72). First, Kacian has moved to exclude at trial any evidence of her accident history or safety record from her employment with the Postal Service. (ECF No. 65.) Second, Kacian has moved to exclude any evidence of the termination of Postal Service employees who were not based out of the Johnstown Office. (ECF No. 67.) As for the Postmaster General, she has moved to exclude certain testimony by a witness Kacian intends to call at trial, Randy Hamonko, as well as evidence about a disciplinary citation

Hamonko incurred while working at the Johnstown Post Office. (ECF No. 70.) Similarly, the Postmaster General has moved to exclude certain testimony by another witness Kacian intends to call at trial, Joseph Sarosi. (ECF No. 72.) Sarosi was Kacian's union representative at the time of her termination.

Pending before the Court also are Kacian's objections to the Postmaster General's witness list (ECF No. 76). Kacian seeks to prevent three of the Postmaster General's witnesses from testifying at trial on the grounds that these witnesses were not listed in the Postmaster General's initial disclosures. The Court will address the parties' motions in limine and Kacian's objections below, beginning with her objections.

### A.    Kacian's Objections to the Postmaster General's Witness List

On February 21, 2017, the Postmaster General filed her witness list and offers of proof describing the substance of each witness's expected testimony (ECF No. 74). In this list, the Postmaster General identified seven witnesses she intends to call at trial, and one witness she may call at trial. The next day, Kacian filed objections to the Postmaster General's witness list (ECF No. 76), requesting that three of the Postmaster General's witnesses be excluded because the Postmaster General neither included these witnesses in her initial disclosures nor ever supplemented her initial disclosures to include these witnesses.

Specifically, Kacian seeks to exclude as witnesses Denise Johnson, Rodney Hiner, and Jerry Briton. Johnson is a Postal Service labor-relations specialist for the Western District of Pennsylvania. (ECF No. 74 at 5.) The Postmaster General intends to call Johnson to

> authenticate and admit as business records any documents not
> otherwise admitted by stipulation. Ms. Johnson has a lengthy
> career in Postal Service administration and can discuss the hiring,

assignment, classifications, and removal of a wide variety of
employees hired by the Postal Service. Specifically, Ms. Johnson
will testify regarding the large volume of temporary employees
and their specific employment rights. If necessary, she can
discuss the numbers of temporary employees removed within the
district and the variety of reasons that form the basis of such
removal. Ms. Johnson is also familiar with Plaintiff's case and
employment record to include hiring information, salary, and
discipline. Ms. Johnson, with extensive experience in labor
relations and knowledge of the collective bargaining agreement,
will testify about the requirement of "just cause" as it relates to the
issuance of discipline for transitional employees and other issues
involving the union contract and temporary employees. She will
testify that labor relations had no issue with Plaintiff's
termination.

(*Id.* at 5-6.) Hiner worked at the Johnstown Post Office at the same time as Kacian and was her
union representative. The Postmaster General intends to call Hiner to "testify that there was
nothing improper or unusual about [Kacian's predisciplinary interview] and [he] will agree that
Plaintiff's safety infraction is a ground that supports removal. He will deny any knowledge of
retaliation in this case." (*Id.* at 4.) As for Briton, he is currently a Postal Service Supervisor at
the Johnstown Post Office, but he was a postal carrier at the time of the events underlying this
case and worked with Kacian. The Postmaster General intends to call Britton to

describe the general nature of the Postal Service work floor and
the basic responsibilities of carriers. If necessary, Mr. Britton will
testify that he did not observe any retaliation by Supervisor LaRue
in Plaintiff's case. He can also comment on the safety infractions
and removals of other employees at the Johnstown Post Office
should this information be deemed admissible.

(*Id.* at 6.)

The Postmaster General does not dispute that these witnesses were not listed on her
initial disclosures, but argues that their exclusion is not warranted for two reasons. As to all

three witnesses, the Postmaster General argues that their identities were otherwise disclosed to Kacian during discovery and known to her. As to Johnson specifically, the Postmaster General argues further that—even if Johnson should have been included in the Postmaster General's initial or supplemental disclosures—this omission was substantially justified or harmless.

Under the Federal Rules of Civil Procedure, a party must generally, without awaiting a discovery request, disclose to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26(e) further mandates that parties timely supplement or correct their Rule 26(a) disclosures. A party who fails to comply with the disclosure requirements of Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Substantial justification exists if there is a genuine dispute about whether the party was required to make the disclosure. *See Claude Worthington Benedum Found. v. Harley*, No. 12-cv-1386, 2014 WL 3614237, at *3 (W.D. Pa. July 22, 2014) (citation omitted). And a failure to disclose is harmless "if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 249 (W.D. Pa. 2012) (internal quotation marks and citation omitted).

Although the imposition of Rule 37(c)(1) sanctions is a matter within the court's discretion, "[t]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the

proponent of the evidence.'" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)

(quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)).

Thus, in exercising its discretion to exclude evidence, the court must consider: (1) the prejudice

or surprise of the party against whom the excluded evidence would be admitted; (2) the ability

of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt

the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or

willfulness in failing to comply with the discovery obligation. *Nicholas v. Pennsylvania State

University*, 227 F.3d 133, 148 (3d Cir. 2000) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710,

719 (3d Cir. 1997)).

Applying this standard here, the Court finds that exclusion of Jerry Britton and Rodney

Hiner is not warranted. Under Rule 26(e), a party is required to supplement her initial

disclosures only if "the additional or corrective information has not otherwise been made

known to the other parties during the discovery process or in writing." *See also Veverka v. Royal

Caribbean Cruises Ltd.*, 649 F. App'x 162, 166 (3d Cir. 2016) (affirming district court's decision not

to exclude affidavit from witness whose identity, although not disclosed under Rule 26(a) or (e),

was known to objecting party). After consideration of the parties' arguments, the Court finds

that the Postmaster General was under no obligation to supplement her initial disclosures with

respect to Jerry Britton and Rodney Hiner because both were already known to Kacian.

Additionally, even assuming that Britton and Hiner's names should have been included in the

Postmaster General's initial Rule 26(a) disclosures, their omission appears harmless. *See Smith*,

912 F. Supp. 2d at 249.

Regarding Britton, Kacian cannot plausibly argue that his identity was unknown to her. Britton was Kacian's coworker at the time of the events underlying this case and—as she stated in her deposition—she has stayed in touch with him since her termination:

> Q.   Do you stay in touch with anybody else from the postal service besides Joe Sarosi?
> A.   The only person I do talk to every now and then is a guy, Jerry.
> Q.   What's his last name?
> A.   Britton.

(ECF No. 84-1 at 3.)  Nor can Kacian credibly claim that she was unaware that Britton may know relevant information; she specifically testified in her deposition that Britton "did witness some things" regarding the events underlying this case.  (*See id.*)  Thus, because it is clear that Kacian knew both Britton's identity and that he may possess relevant information, the Court will not exclude him as a witness for the Postmaster General.

The same is true for Hiner.  The Postmaster General's initial disclosures included Kacian's union grievance file, which contained several documents that were prepared in the days leading up to her termination.  (ECF No. 84-3 at 5-7.)  Those documents list Hiner's name several times, and are even signed by him.  (*Id.*)  To insist that the Postmaster General should have specifically listed Hiner in her initial disclosures when his name was already included in the documents included with those disclosures places form over substance.  Furthermore, Hiner was Kacian's union steward and her representative at her predisciplinary interview.  (ECF No. 77 at 15.)  Thus, it is clear that Kacian knew both Hiner's identity and that he may possess relevant information.  The Court will therefore also not exclude Hiner as a witness for the Postmaster General.

But the same conclusion does not follow for Denise Johnson.  Although Johnson's name was disclosed during discovery, she was not brought to the attention of Kacian to such a degree that it would be reasonable for Kacian to know that Johnson possessed relevant information.  To review, substantial justification exists if there is a genuine dispute about whether the party was required to make the disclosure, *see Claude*, 2014 WL 3614237, at *3 (citation omitted), and a failure to disclose is harmless "if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced," *Smith*, 912 F. Supp. 2d at 249 (internal quotation marks and citation omitted).

The Postmaster General has offered no specific argument that a genuine dispute exists here.  Rather, the Postmaster General's argument that substantial justification exists is identical to her argument for why Johnson's omission was supposedly harmless, namely that "a party has no duty to formally supplement its initial disclosures with names of witnesses that have been 'otherwise made known' to the opposing party during discovery."  (ECF No. 83 at 4 (citation omitted).)  In support of these arguments, the Postmaster General points to two declarations by Johnson that were disclosed in this case.  The first declaration, dated February 14, 2013, is a one-paragraph document wherein Johnson affirms the accuracy of a set of the Postmaster General's discovery responses.  (ECF No. 83-1 at 4.)  The second declaration, dated May 9, 2013, was submitted by the Postmaster General in support of summary judgment and is somewhat more substantive; it is three-paragraph document wherein Johnson explains her job title, her functions, and affirms the accuracy of a list of transitional employees.  (ECF No 83-2 at 2.)

While these declarations technically disclosed Johnson's name, they did not reasonably place Kacian on notice that Johnson may possess relevant information to such a degree that Johnson's absence from the Postmaster General's disclosures was justified. To allow a party to circumvent disclosure requirements on the basis that the witness's name was included in two stray declarations would render the disclosure requirements hollow. The receiving party would be left guessing about which actors truly possessed relevant information, and would even be wise to depose every person affirming the accuracy of discovery responses. In this case, Johnson's two declarations were insufficient for disclosure purposes, and neither substantial justification nor harmlessness justifies her omission.

The Court is mindful that "[t]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.'" *In re Paoli R.R. Yard*, 35 F.3d at 791-92. There is no indication, however, that Johnson's testimony in this case is "critical" evidence. Based on the Postmaster General's offer of proof, Johnson will be called to authenticate and offer into evidence documents not admitted by stipulation and to discuss several topics related to labor relations and employee discipline. (ECF No 74 at 5-6.) To the extent that other witnesses cannot authenticate documents offered by the Postmaster General, the Court will allow Johnson to be called for that purpose only.

But the Postmaster General is calling several other witnesses that appear knowledgeable about and capable of discussing labor relations and employee discipline. For example, the Postmaster General is calling Mike Olsavsky—the former Postmaster of the Johnstown Post Office—and two current supervisors at the Johnstown post Office, Cheryl Cernetich and Jason

Whorl. Olsavsky "has worked for the Postal Service for over 25 years, which include[d] a variety of different supervisory and management positions and positions in labor relations at district headquarters." (ECF No 74 at 3.) Olsavsky thus seems qualified and able to testify to labor relations and employee discipline. And Cernetich and Whorl—along with the other managerial employees the Postmaster General intends to call—appear similarly qualified and able to testify to labor relations and employee discipline.

Furthermore, even if the Court assumes that Johnson's testimony is "critical evidence," exclusion of these areas of testimony is still appropriate. *See Nicholas*, 227 F.3d at 148. Kacian will suffer significant prejudice if Johnson is allowed to testify because she is poorly equipped to prepare for Johnson's testimony; she has not deposed Johnson, has not directed any discovery toward Johnson, and thus does not know—exactly—what Johnson will testify to. With less than a week to trial, Kacian lacks the ability to cure that prejudice. Although allowing Johnson to testify would not disrupt the trial and while there is no indication of bad faith or willfulness by the Postmaster General, the Court finds that the surprise and prejudice factors are significant enough here to bar part of Johnson's testimony. Thus, Johnson will be allowed to testify only for the purposes of authenticating and offering into evidence documents not admitted by stipulation.[2]

> **B.** **Kacian's Motion to Exclude at Trial Any Evidence of Her Accident History or Safety Record from Her Employment with the Postal Service**

Kacian argues that any evidence of her accident history or safety record from her employment with the Postal Service should be excluded at trial because that evidence is

---

[2] For the reasons in Section II.C of this memorandum opinion, Johnson will be allowed to testify also that non-Johnstown-based transitional employees have been terminated for safety infractions

irrelevant, and because—even assuming it is relevant—it would confuse the jury. (ECF No. 66 at 1.) Kacian points to certain discovery in this case for the proposition that her accident history or safety record played no part in her termination. Thus, she reasons, her accident history and safety record are irrelevant. Although Kacian has made a compelling argument for how she can impeach the Postmaster General's witnesses at trial, her argument does not justify the exclusion of her accident history or safety record.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. To establish retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) adverse action taken by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the adverse action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). Because the parties have stipulated that the first and second elements are satisfied in this case, the principal issue is whether there was a causal connection between Kacian's protected activity and her termination. (*See* ECF No. 64 ¶¶ 1, 3.)

Here, evidence of Kacian's accident history or safety record is directly relevant to that issue.[3] If Kacian's accident history or safety record is sparse, a factfinder could conclude that they played no role in her termination and that any claim to the contrary is frivolous. Similarly,

---

[3] A conditional-relevance issue exists here in that Kacian's accident history or safety record must have been reviewed by a decisionmaker to be relevant. *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). At this preliminary stage, based on the Postmaster General's representations about the testimony to be elicited at trial, the Court is satisfied that conditional relevance is satisfied.

if Kacian's accident history or safety record is voluminous, a factfinder could conclude that they were the reasons for her termination.

The Court is also unconvinced that admission of Kacian's accident history or safety record would confuse the jury. Federal Rule of Evidence 403 authorizes the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Kacian has made no credible argument that the probative value of her accident history or safety record is substantially outweighed by a danger of confusing the jury, and the Court does not see how it would be.

In this case, factual questions appear to exist as to who, exactly, made the decision to terminate Kacian, and on what basis that decision was made. Kacian argues that the Postmaster General's interrogatory responses and the deposition testimony of George LaRue firmly establish that it was solely LaRue who made the decision to fire Kacian, and that he did not base his decision on Kacian's accident history or safety record. The Postmaster General in turn argues that Mike Olsavsky, the Postmaster of the Johnstown Post Office, made the ultimate decision, and that Olsavsky considered Kacian's accident history and safety record. Stated simply, these are the exact kinds of questions best resolved by factfinders.

Kacian spins a creative argument that Olsavsky's review of her accident history or safety record is irrelevant because she is relying on a "cat's paw" theory of liability.[4] Under a cat's

---

[4] As explained by the United States Supreme Court, "[t]he term "cat's paw" derives from a fable conceived by Aesop . . . . In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing." *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 n.1 (2011) (citation omitted).

paw theory, an employee may "hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Staub*, 562 U.S. at 415. In cat's paw cases, an employer is liable when one of its agents commits an action based on retaliatory animus that was intended to cause, and was the proximate cause of, an adverse-employment decision. *Id.* at 411; *see also Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 330 (3d Cir. 2015) (citing *Staub*, 562 U.S. at 422). Kacian reasons that—because she is alleging that only LaRue harbored retaliatory animus toward her—it is irrelevant whether Olsavsky reviewed her accident history or safety record in providing his final approval.

Not so. Even under a cat's paw theory of liability, Kacian will have to establish (1) that LaRue harbored retaliatory animus toward her, (2) that he acted on that animus with the intent to cause an adverse-employment decision, and (3) that LaRue's actions were the proximate cause of the adverse-employment decision. *See Jones*, 796 F.3d at 327-28, 330-31. Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged," and excludes links that are "remote, purely contingent, or indirect." *Staub*, 562 U.S. at 419 (citation and internal quotation marks omitted). Kacian's accident history and safety record are therefore relevant because their contents will likely make it more or less probable that LaRue's actions were the proximate cause of her termination. And this remains true even if Olsavsky was the ultimate decisionmaker; the things he did—or did not—consider in reaching his decision relate to whether LaRue's actions were the proximate cause for the decision.

Thus, the Court will not bar the Postmaster General from offering evidence regarding Kacian's accident history or safety record from her employment with the Postal Service.

**C.** **Kacian's Motion to Exclude Any Evidence of the Termination of Postal Service Employees Who Were Not Based out of the Johnstown Post Office**

Kacian's second motion in limine seeks to prevent the Postmaster General from offering evidence regarding the termination of Postal Service employees who were not based out of the Johnstown Post Office. (ECF No. 67.) Kacian states that she "anticipates that the Defendant will attempt to enter into evidence a spreadsheet that lists transitional employees who have been terminated throughout the Western District of Pennsylvania and that the Defendant will seek . . . testimonial evidence of the same through Denise Johnson, a Labor Relations Specialist." (*Id.* ¶¶ 1-2.) Kacian argues that this evidence should be excluded because it is irrelevant and because, even assuming it is relevant, it would confuse the jury. (ECF No. 68 at 1.)

Specifically, Kacian argues that the Postal Service has no set policy to determine the severity of infractions but instead relies on the discretion and judgment of the supervisor who reviews the infractions. (ECF No. 68 at 2 (citing Michael Oslavsky deposition excerpts).) According to Kacian, the circumstances surrounding the termination of non-Johnstown-based transitional employees are therefore irrelevant. (*See id.*) Kacian appears to argue further that merely introducing a spreadsheet listing employees and the reasons for their termination presents foundational issues because determining "why an employee was terminated requires an in depth discussion of all of the circumstances surrounding the termination, not simply a listing of the alleged act itself." (*Id.*)

In her response, the Postmaster General does not appear to dispute any of Kacian's factual claims, but instead argues for an all-or-nothing approach. (*See* ECF No. 83.) She states that Kacian intends to introduce evidence regarding Johnstown-based transitional employees

and urges the Court to bar all evidence regarding "the circumstances and disciplinary decisions made in other [transitional-employees'] cases (both in Johnstown and throughout the district)." (*Id.* at 5.) If the Court does allow Kacian to introduce evidence surrounding Johnstown-based transitional employees, the Postmaster General requests that she be allowed to introduce evidence regarding non-Johnstown-based transitional employees as rebuttal evidence. (*Id.*)

As a threshold matter, the Court rejects the Postmaster General's suggestion that an all-or-nothing approach toward evidence of the termination of transitional employees is appropriate. Not all the evidence regarding the termination of transitional employees carries the same weight in this case; evidence about Johnstown-based transitional employees is more relevant because that is the post office at issue in this case. Thus, the Court will neither bar all evidence regarding transitional employees nor blanketly admit all such evidence.

Evidence of the termination of non-Johnstown-based transitional employees is at least marginally relevant because it can establish that it is not unheard of for transitional employees to be terminated for driving-safety infractions. But that appears to be the only point on which this evidence would be relevant. If disciplinary action for transitional employees is entirely up to the discretion of the supervisor in question, then evidence of the termination of non-Johnstown-based transitional employees tells us almost nothing about Kacian's termination. It may very well be true that transitional employees in post offices other than Johnstown's were terminated or disciplined for minor safety infractions. Conversely, transitional employees in other post offices may have been treated more leniently than Johnstown-based transitional employees. But Kacian worked in the Johnstown office, and the relevance of the leniency or strictness of supervisors in other offices seems attenuated at best.

Nevertheless, marginal relevance is still relevance. And the Court does not think this area of inquiry would confuse the jury or take up significant time. Because evidence regarding the termination of non-Johnstown-based transitional employees can establish that it is not unheard of for transitional employees to be terminated for safety infractions, the Court will not bar such testimony. Furthermore, because it appears Denise Johnson is the only witness who can testify to this point, the Court will widen the scope of Johnson's permitted testimony to include this narrow area. If the Postmaster General can lay the necessary foundation and if Johnson possesses personal knowledge about the terminations she intends to testify about, then Johnson may testify that non-Johnstown-based transitional employees have been terminated for safety infractions.[5] Other than that, for the reasons in Section II.A of this memorandum opinion, Johnson will be allowed to testify only for the purposes of authenticating and offering into evidence documents not admitted by stipulation.

This leaves the matter of the spreadsheet of terminated transitional employees (ECF No. 68-1). The spreadsheet lists 28 transitional employees—with their names redacted—who worked in the Western District of Pennsylvania but were terminated between a specific timeframe. (*See id.*) The spreadsheet includes a brief description of the basis for their termination and their removal date. (*Id.*) None of the listed transitional employees worked in the Johnstown Post Office. (*Id.*) Although the Postmaster General has provided no reason why the spreadsheet is relevant, it appears relevant for the same reasons that Johnson's testimony on

---

[5] The Court will not, however, permit a roving examination into the specifics and contours of each of those terminations—by either party. Both parties lament that testimony or evidence concerning other transitional employees would require "mini trials" and waste significant time. (*See* ECF Nos. 67 at 3; 83 at 5.) Given the marginal relevance of evidence concerning the termination of non-Johnstown-based employees, the Court does not see the need for extensive examination about those terminations.

this topic would be relevant; to establish that at least some transitional employees have been terminated for safety infractions.

Kacian's argument that none of the listed employees were based out Johnstown is well taken. But that does not make the spreadsheet completely irrelevant, and Kacian is welcome to probe that point on cross-examination. As for Kacian's argument that Johnson "does not have any personal knowledge of the employees or the incidents that led to the terminations," the Court will reserve its ruling on that objection for trial. Thus, the Court will not exclude the terminated transitional-employees spreadsheet at this time.

**D.    The Postmaster General's Motion to Exclude Certain Testimony by and Regarding Randy Hamonko**

The Postmaster General has moved to exclude certain testimony by and about Kacian's boyfriend, Randy Hamonko. (ECF No. 70.) Hamonko, like Kacian, is a former transitional employee at the Johnstown Post Office. Hamonko and Kacian began dating in 2010 and currently live together. The Postmaster General seeks to bar Hamonko from testifying "regarding his placement on administrative leave for failing to process 91 pieces of mail that occurred shortly after Ms. Kacian's termination." (*Id.* at 1.) The Postmaster General states that Kacian will offer this evidence to establish a pattern of antagonism directed at her and argues that this evidence is both impermissible "me too" evidence and irrelevant because it is too attenuated from the issues in this case.

At this preliminary stage, the Court will not exclude testimony regarding Hamonko's placement on administrative leave. Hamonko's placement on administrative leave—roughly four weeks after Kacian's termination—may indeed be probative on the issue of retaliatory

animus.  Furthermore, even assuming that this evidence is "me too" evidence, such evidence is neither per se admissible nor per se inadmissible.  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted).  "[T]he question of whether evidence of discrimination against other employees by other supervisors is relevant is fact based and depends on several factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."  *Id.* (citation omitted).  Applying those factors here does not weigh in favor of exclusion; Hamonko's placement on administrative leave is not too dissimilar or far removed from Kacian's termination to be irrelevant, and this evidence supports Kacian's theory of the case in that a jury could find it probative of retaliatory animus.  Thus, the Court will not bar testimony regarding Hamonko's placement on administrative leave.

> **E.** **The Postmaster General's Motion to Exclude Certain Testimony by Joseph Sarosi**

Lastly, the Postmaster General has moved to exclude certain testimony by Joseph Sarosi. (ECF No. 72).  Sarosi was Kacian's union representative at the time of her termination.  (*Id.*)  The Postmaster General states that "Sarosi will testify about the cases of other employees at the Johnstown Post Office, the various infractions committed by these employees, and his opinion that these employees were treated more favorably than [Kacian]," and argues that this testimony would be improper lay opinions, speculative, irrelevant, waste time, and confuse the jury.  (*Id.*; *see also* ECF No. 73.)  The Postmaster General requests that the Court exclude any testimony by Sarosi about the cases of other employees, the types of infractions that led to discipline in the Johnstown Office, and testimony that Kacian and Hamonko were the only

transitional employees who were terminated since Sarosi became union president in 2009.  (ECF No. 73 at 4.)

The Postmaster General's arguments are unconvincing.  Under Federal Rule of Evidence 701, a layperson may testify to an opinion if that opinion is rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  Although the Postmaster General argues that Sarosi lacks firsthand knowledge of the disciplinary cases he intends to testify to, it is not clear if this is true.  In her witness list, Kacian states that Sarosi will

> testify about his involvement in the meeting in which Ms. Kacian reported George Larue for sexual harassment.  He can testify as to his observations as the union president in regard to the types of infractions that led to discipline in the Johnstown office.  He also can confirm that, as of March 2013, the only transitional employees who had been terminated since he became president in 2009 were Ms. Kacian and Mr. Hamonko.

(ECF No. 58 at 1.)  Based on Kacian's offer of proof, it appears Sarosi will testify specifically about his involvement and personal observations—thus satisfying Rule 701.  If Kacian is unable to or does not lay the requisite foundation for Sarosi's testimony, the Postmaster General is welcome to raise that objection during trial.  But the Court will not exclude his testimony as improper lay opinion at this time.

Nor will the Court exclude Sarosi's testimony on the grounds of speculation, relevance, waste of time, or confusion of the issues.  Sarosi's testimony, if based on his own involvement and observations, is unlikely to be speculative.  As for relevance, his testimony about disciplinary cases at the Johnstown Post Office relates to the central issue in this case: whether

Kacian's termination was motivated by a retaliatory animus. Although the Postmaster General is correct in stating that the relevance of Sarosi's testimony will depend in part on whether the disciplinary cases he knows about involved similarly situated employees, that argument goes to the weight of the testimony rather than its admissibility. Even if none of the other employees were similarly situated to Kacian, Sarosi's testimony would still be relevant if it supported the inference that the Johnstown Post Office was generally lenient about disciplinary issues. And the Court does not believe that the probative value of Sarosi's testimony—even if it necessitated inquiry by the Postmaster General into the bases for his testimony—is substantially outweighed by a risk of wasting time or confusing the issues. If that belief turns out to be incorrect, the Court will take steps during trial to address any delay or confusion.

Thus, the Court will not limit Sarosi's testimony at this time.

III.    **Conclusion**

For the foregoing reasons, Kacian's objections to the Postmaster General's witness list are **GRANTED IN PART**. Kacian's motion to exclude any evidence regarding her accident history or safety record from her employment with the Postal Service is **DENIED**. Kacian's motion to exclude any evidence about the termination of non-Johnstown-based Postal Service employees is **DENIED**. And the Postmaster General's motions to exclude certain testimony by Randy Hamonko and Joseph Sarosi are **DENIED**. A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILLARY A. KACIAN,** | ) | **Case No. 3:12-cv-102** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| v. | ) | |
| | ) | |
| **MEGAN J. BRENNAN,** *in her official* | ) | |
| *capacity as Postmaster General of the* | ) | |
| *United States Postal Service,* | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

**NOW**, this 8th day of March 2017, upon consideration of the parties' motions in limine, Hillary Kacian's objections to the Postmaster General's witness list, and all related filings, and for the reasons set forth in the memorandum opinion accompanying this order, it is **HEREBY ORDERED** as follows:

1. Kacian's objections to the Postmaster General's witness list (ECF No. 76) are **GRANTED IN PART** as follows:

    A. Kacian's objections to Jerry Britton and Rodney Hiner are **DENIED**. Thus, the Postmaster General may call Jerry Britton and Rodney Hiner at trial.

    B. Kacian's objection to Denise Johnson is **GRANTED IN PART**. The Postmaster General may call Denise Johnson at trial for the following purposes only:
        i. To authenticate and offer into evidence documents not admitted by stipulation.
        ii. To testify that non-Johnstown-based transitional employees have been terminated for safety infractions.

2. Kacian's motion in limine to exclude evidence of her accident history or safety record from her employment with the Postal Service (ECF No. 65) is **DENIED**.

3.  Kacian's motion in limine to exclude any evidence about the termination of non-Johnstown-based Postal Service employees (ECF No. 67) is **DENIED**.

4.  The Postmaster General's motion to exclude certain testimony by Randy Hamonko (ECF No. 70) is **DENIED**.

5.  The Postmaster General's motion to exclude certain testimony by Joseph Sarosi (ECF No. 72) is **DENIED**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**